## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| DOROTHEIA GLOVER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 11-431-RGA |
| | : | |
| CITY OF WILMINGTON and | : | |
| GERALD J. CONNOR, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Stephen Price Norman, Esq. (argued), THE NORMAN LAW FIRM, Dagsboro, DE.

    Attorney for Plaintiff Dorotheia Glover.

Rosamaria Tassone-DiNardo, Esq. (argued), CITY OF WILMINGTON LAW DEPARTMENT, Wilmington, DE.

    Attorney for Defendants City of Wilmington and Gerald J. Connor.

August $7$, 2013

*Howard G. Andrews*
**ANDREWS, U.S. DISTRICT JUDGE:**

Plaintiff Dorotheia Glover filed her complaint on May 17, 2011. (D.I. 1). The Complaint

asserts claims pursuant to 42 U.S.C. § 1983 for "Fourth Amendment Malicious Prosecution,"

"Fourth Amendment Unlawful Detention," "Fourth Amendment Use of Excessive Force," and

"Fourteenth Amendment Equal Protection" against Defendants City of Wilmington and Master

Corporal Gerald J. Connor, Jr. of the Wilmington City Police Department. The Complaint also

asserts violations of Title II of the Americans with Disabilities Act and § 504 of the

Rehabilitation Act against the City. On March 6, 2012, Plaintiff filed an Amended Complaint.

(D.I. 51). The Amended Complaint also asserts a *Monell* claim against the City as well as claims

for "Failure to Provide Medical Care" and "State Malicious Prosecution" against the City and

Officer Connor.

Defendants filed a motion for summary judgment as to all claims on January 22, 2013.

(D.I. 89). The motion is fully briefed (D.I. 90, 103, 105), and the Court heard oral argument on

June 13, 2013. For the reasons that follow, the Court will grant in part and deny in part

Defendants' motion for summary judgment.[1]

## I.    FACTS

This case arises out of a car accident that occurred on July 3, 2009, in which Plaintiff's

vehicle was struck by a drunk driver. Plaintiff's version of the events that evening differs greatly

from those of Officers Connor and Schifano. Plaintiff claims that she was a passenger in her

own vehicle when her car was struck by the drunk driver. (D.I. 97 at A1155). When Officer

---

[1] In her responsive brief, Plaintiff purported to voluntarily dismiss her claim based on
equal protection. (D.I. 103 at ii, n.1). Plaintiff, however, did not file any separate documents
doing so.

1

Schifano arrived on the scene, Plaintiff told him that she was not driving her vehicle when the collision occurred and that she was having a panic attack. (*Id.* at A1155, 1162). Officer Connor later arrived on the scene and took over questioning Plaintiff. Plaintiff claims that she told Officer Connor that she was not driving her car and that the driver was her companion, June Goldborough. (*Id.* at A1156). Plaintiff also claims that she informed Officer Connor that she was having a panic attack. Officer Connor, believing that the symptoms of Plaintiff's panic attack were a sign of intoxication, administered a portable breath test, which showed a blood alcohol concentration of 0.000. (*Id.*). Plaintiff also told Officer Connor that she had taken percocet the day before and that it might still be in her system. (*Id.* at A1164). Officer Connor asked Plaintiff whether she wanted an ambulance, which Plaintiff refused. (*Id.* at A1156, 1164). Officer Connor then told her that she was being arrested for refusing medical care. (*Id.* at A1156). After handcuffing Plaintiff, Officer Connor pushed her to the ground, which caused her to sustain deep cuts on her knees. (*Id.* at A1157). Plaintiff was then transported to the police station and imprisoned in a cell for several hours, while she continued to have a panic attack. Plaintiff was later charged with resisting arrest. (*Id.* at A1163). The State ultimately filed a *nolle prosequi* in the criminal proceeding against Plaintiff for resisting arrest, terminating the prosecution. (D.I. 93 at A459-62).

Ms. Goldborough's deposition testimony mostly supports Plaintiff's version of events. She testified that she, not Plaintiff, was driving Plaintiff's car and that they both told the police that Plaintiff was not driving. (D.I. 93 at A550-52). Ms. Goldborough also testified that Officer Connor shoved Plaintiff to the ground either while he was handcuffing her or after she was handcuffed. (*Id.* at A529, 532-33).

2

Officer Schifano and Officer Connor both assert that Plaintiff first admitted to driving and then later backtracked and said that she was not driving. (D.I. 94 at A631, 676; D.I. 95 at A839-43). They claim that none of the witnesses or the other two people who were in Plaintiff's car could identify the driver. (D.I. 95 at A843-44). Officer Connor also stated that he observed Plaintiff slurring and mumbling and that she could not stand without swaying or stumbling. (D.I. 94 at A632, 644, 646). He asked Plaintiff to recite the alphabet, to which she responded that she was having a panic attack. (*Id.* at A749-50). He asked whether she needed an ambulance, and she said no. (*Id.* at 640-41). Believing Plaintiff might be under the influence of drugs, Officer Connor asked her if she had taken any medication. (*Id.* at A653-54, 665). Plaintiff admitted that she had taken percocet the previous day. It was his opinion that Plaintiff was using her panic attack symptoms to mask her intoxication. He decided to take her to the police station for further investigation of driving under the influence. He maintains that Plaintiff pushed and pulled away from him in an attempt to prevent him from placing handcuffs and purposely fell to the ground to prevent him from taking her to his police vehicle. (*Id.* at A676-78). It was later decided that DUI charges would not be pursued. Officer Connor, however, did charge Plaintiff with resisting arrest. As stated, that charge ultimately was dropped.

## II.    LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "could affect the outcome" of the proceeding. *See Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v.*

3

*Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10 (1986). The court will "draw all reasonable

inferences in favor of the nonmoving party, and it may not make credibility determinations or

weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

If the moving party is able to demonstrate an absence of disputed material facts, the

nonmoving party then "must come forward with 'specific facts showing that there is a genuine

issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Matsushita*,

475 U.S. at 587. The mere existence of some evidence in support of the nonmoving party,

however, will not be sufficient for denial of a motion for summary judgment. *Anderson*, 477

U.S. at 249. Rather, the nonmoving party must present enough evidence to enable a jury to

reasonably find for it on that issue. *Id.* If the nonmoving party fails to make a sufficient showing

on an essential element of its case with respect to which it has the burden of proof, the moving

party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986).

## III.   DISCUSSION

### A.   Qualified Immunity

Officer Connor first argues that he is entitled to qualified immunity on Plaintiff's § 1983

Fourth Amendment claims because he had reasonable suspicion that Plaintiff had committed the

crime of DUI. (D.I. 90 at 4-14). Plaintiff disputes that Officer Connor had either reasonable

suspicion or probable cause to arrest her. (D.I. 103 at 11-14).

"[L]aw enforcement officers acting within their professional capacity are generally

immune from trial 'insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'" *Wilson v. Russo*, 212

4

F.3d 781, 786 (3d Cir. 2000) (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)); *see also Rogers v. Powell*, 120 F.3d 446, 454 (3d Cir. 1997). The qualified immunity defense requires a two-step analysis. First, the Court "must 'determine whether the plaintiff has alleged the deprivation of an actual constitutional right.'" *Wilson*, 212 F.3d at 786 (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). Second, the Court must "'determine whether that right was clearly established at the time of the alleged violation.'" *Id.* (quoting *Conn*, 526 U.S. at 290). In determining whether a right was clearly established, the relevant "inquiry is whether a reasonable officer could have believed that his or her conduct was lawful in light of the clearly established law and the information in the officer's possession." *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997). "A law enforcement officer is entitled to qualified immunity if it would not be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Gilles v. Davis*, 427 F.3d 197, 203-04 (3d Cir. 2005). Even if an officer does not have actual reasonable suspicion or probable cause, where "officers of reasonable competence could disagree on [the] issue, [qualified] immunity should be granted." *Woodlen v. Jimenez*, 173 F. App'x 168, 170 (3d Cir. 2006).

Generally, "the existence of probable cause is a factual issue." *Groman v. Township of Manalapan*, 47 F.3d 628, 635 (3d Cir. 1995) (citing *Deary v. Three Un-Named Police Officers*, 746 F.2d 185, 191 (3d Cir. 1984)). A court may grant summary judgment on probable cause in an appropriate case, *id.*, but this is not such a case.

Viewing the disputed evidence in the light most favorable to the Plaintiff, Officer Connor did not have probable cause to arrest Plaintiff for DUI. There are two factual issues that must be considered. Was the Plaintiff driving? Was she impaired? For purposes of this decision, in

5

view of her testimony and that of Ms. Goldborough, the Plaintiff was not driving and that is what they consistently told both officers, Connor and Schifano. In regards to impairment, there was undisputed evidence that she had taken percocet at some undetermined time in the previous twenty-four hours and that she was showing symptoms that were consistent with impairment and panic attack. If evidence of impairment was not at the probable cause level, it was pretty close. Thus, viewing the disputed evidence as Plaintiff suggests, Officer Connor did not have probable cause to arrest Plaintiff for DUI because he did not have probable cause that she had driven the vehicle.

Using the same standard of review, however, Officer Connor did have a reasonable suspicion that the Plaintiff was driving under the influence. The primary argument of Plaintiff is that there was no reasonable suspicion that she had been driving because she and Ms. Goldborough told the officers that Ms. Goldborough had been driving. Accepting that as truth, as I must, it does not follow that Officer Connor did not have reasonable suspicion that the Plaintiff was the driver. Plaintiff owned the car; Plaintiff had the car keys shortly after the accident. Although obviously less than conclusive that Plaintiff had been the driver (and not sufficient to establish probable cause), those two undisputed facts would provide reasonable suspicion that the Plaintiff had been the driver, notwithstanding that Plaintiff and Ms. Goldborough told the officers a contrary story. Thus, Officer Connor had reason to continue the investigation.

Delaware cases provide that under some circumstances, a person suspected of DUI, but for whom the police officer does not have probable cause, may lawfully be taken to the police station for further investigation. *E.g.*, *State v. Maxwell*, 1996 WL 658993, *2 (Del. Super. Ct.

6

May 20, 1996) ("in very limited circumstances"); *Williams v. Shahan*, 1993 WL 81264, *2 (Del. Super. Ct. Aug. 30, 1996).[2] Plaintiff has not cited any Delaware cases in support of the proposition that Delaware law prohibits taking a person against the person's will to a police station for investigative purposes. While there could be arguments about whether this was an appropriate case to take the suspect to the police station, it is not "clearly established" that Officer Connor could not make that judgment call under the undisputed circumstances in this case.

Detention of the Plaintiff, therefore, was permissible. Handcuffing her for officer safety and to maintain order was reasonable and, in any event, it was not clearly established that Officer Connor could not handcuff her. *Cf. Woodlen*, 173 F. App'x at 171 (different facts). If he could lawfully detain Plaintiff, and she resisted, he would then have probable cause to arrest her for resisting arrest. 11 *Del. C.* § 1257(b) ("A person is guilty of resisting arrest when the person intentionally prevents or attempts to prevent a peace officer from effecting an arrest or detention

---

[2] 11 *Del. C.* § 1902 provides:

Questioning and detaining suspects.

(a) A peace officer may stop any person abroad, or in a public place, who the officer has reasonable ground to suspect is committing, has committed or is about to commit a crime, and may demand the person's name, address, business abroad and destination.

(b) Any person so questioned who fails to give identification or explain the person's actions to the satisfaction of the officer may be detained and further questioned and investigated.

(c) The total period of detention provided for by this section shall not exceed 2 hours. The detention is not an arrest and shall not be recorded as an arrest in any official record. At the end of the detention the person so detained shall be released or be arrested and charged with a crime.

7

of the person."). There is a factual dispute as to whether Plaintiff resisted arrest. Thus, I cannot say there was probable cause to arrest her for resisting arrest.

Therefore, viewing the evidence in the light most favorable to the Plaintiff, there was insufficient probable cause to arrest her for DUI and resisting arrest. There was sufficient evidence to detain her on suspicion of DUI and to invoke the provisions of § 1902 to conduct further investigation. While detaining her, by its terms, § 1902 only allows detention for up to two hours. Plaintiff was in custody for more than four hours. (D.I. 104 at P53). Thus, the evidence that would have permitted Officer Connor to detain the Plaintiff for a period of time would not justify a four hour detention. Officer Connor knew this. (D.I. 94 at 70). Therefore, crediting Plaintiff's version of the facts, Officer Connor knew his conduct was unlawful, and he cannot be found to have shown that he had qualified immunity on Plaintiff's § 1983 claims. The Court, therefore, must analyze each of Plaintiff's § 1983 claims on its merits.

**B.     Malicious Prosecution Claims**

Plaintiff asserts both federal and state claims for malicious prosecution. The elements of a claim for malicious prosecution under § 1983 are: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *DiFronzo v. Chiovero*, 406 F. App'x 605, 608 (3d Cir. 2011). The elements of malicious prosecution under Delaware law are generally the same:

8

> (1) there must have been a prior institution or continuation of some
> regular judicial proceedings against the plaintiff . . .; (2) the former
> proceedings must have been by, or at the instance of the defendant
> . . .; (3) the former proceedings must have terminated in favor of
> [plaintiff]; (4) there must have been malice in instituting the former
> proceedings; (5) there must have been want of probable cause for
> the institution of the former proceedings; and (6) there must have
> been injury or damage resulting to the plaintiff from the former
> proceedings.

*Quartarone v. Kohl's Dept. Store's, Inc.*, 983 A.2d 949, 954-55 (Del. Super. 2009)

Defendants argue that they are entitled to summary judgment because Plaintiff cannot

establish as a matter of law that the criminal proceeding against her terminated in her favor. (D.I.

14). Under Third Circuit law, a *nolle prosequi* satisfies the favorable termination requirement

only if the record indicates the reason for the entry of a *nolle prosequi*. *DiFronzo v. Chiovero*,

406 F. App'x 605, 608-09 (3d Cir. 2011). Here, the record is silent as to why the State in the

underlying criminal proceeding entered a *nolle prosequi* and, therefore, the *nolle prosequi* does

not satisfy the favorable termination requirement of a claim for malicious prosecution. (D.I. 104

at P49). Accordingly, the Court will grant Defendants' motion for summary judgment as to

Plaintiff's federal claim for malicious prosecution under § 1983.[3]

Third Circuit law, however, is not controlling as to the state law claim. Delaware courts

generally have treated a *nolle prosequi* as satisfying the favorable termination requirement. *See*

*Quartarone v. Kohl's Dept. Store's, Inc.*, 983 A.2d 949, 958 (indicating that *nolle prosequi* is a

"favorable outcome" in relation to a claim for malicious prosecution); *see also Stidham v.*

*Diamond State Brewery, Inc.*, 21 A.2d 283, 284-85 (Del. Super. 1941) (stating that "such entry of

---

[3] The Court's recollection is that Plaintiff conceded at oral argument that summary
judgment should be granted on this claim.

9

nolle prosequi and the consequent discharge of the defendant is such a sufficient termination of

the cause in favor of the defendant as would furnish the basis of the present suit"). Defendants

point out that the Court's focus in the *Quartarone* and *Stidham* cases was on the lack of probable

cause element. Although it is true that the *Quartarone* and *Stidham* cases did not deeply analyze

the "favorable outcome" issue, they do accord with the general understanding in Delaware that a

*nolle prosequi* is an outcome favorable to the defendant. Accordingly, the Court will deny

Defendants' motion for summary judgment as to Plaintiff's state law claim for malicious

prosecution.

## C. Unlawful Detention

"Where the police lack probable cause to make an arrest, the arrestee has a claim under §

1983 for false imprisonment based on detention pursuant to that arrest." *Groman v. Township of*

*Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). As discussed, a jury could reasonably conclude

that Officer Connor did not have probable cause to arrest Plaintiff for DUI if it found that Officer

Connor did not have reason to believe that Plaintiff was driving and did not have probable cause

to arrest her for resisting arrest in view of the disputed testimony. Although Officer Connor had

reasonable suspicion to detain Plaintiff on suspicion of DUI, Plaintiff could not be detained for

more than two hours if there was no probable cause to arrest. Accordingly, the Court will deny

Defendants' motion for summary judgment as to Plaintiff's claim under § 1983 for unlawful

detention.

## D. Excessive Force

"A cause of action exists under § 1983 when a law enforcement officer uses force so

excessive that it violates the Fourth and Fourteenth Amendments to the United States

10

Constitution." *Groman*, 47 F.3d at 633-34 (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 277 (3d Cir. 1990)). "Summary judgment is appropriate if, as a matter of law, the evidence would not support a reasonable jury finding that the police officers' actions were objectively unreasonable." *Id.* at 634.

If a police officer uses force to effectuate an arrest, that force must be reasonable. *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see also Groman*, 47 F.3d at 634. "The reasonableness of the officer's use of force is measured by 'careful attention to the facts and circumstances of each particular case, including the severity of crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Groman*, 47 F.3d at 634 (quoting *Graham*, 490 U.S. at 396).

Plaintiff and Ms. Goldborough both testified that Officer Connor pushed Plaintiff. Plaintiff claims that Officer Connor pushed her after she was handcuffed. (D.I. 97 at A1159) ("I was already handcuffed. As they [were] taking me to the vehicle, to the police car, he was pushing me."). Ms. Goldborough testified that Officer Connor "was rough with putting the cuffs on" and "shoved [Plaintiff] to the ground." (D.I. 93 at A529, 532-34). Ms. Goldborough also testified that, although Plaintiff asked why she was being handcuffed, she was not being uncooperative. (*Id.* at A534-35). Officer Connor, on the other hand, testified at deposition that the Plaintiff "purposely threw herself to the ground in an effort to avoid being taken to the police vehicle." (D.I. 94 at A731).

11

The crimes at issue here were driving under the influence and resisting arrest. Evaluating the *Graham* factors, the Court concludes that neither of these crimes is "particularly severe."[4] *See Groman*, 47 F.3d at 634 (concluding that resisting arrest is not "particularly severe"). A reasonable jury could also conclude that Plaintiff did not pose a serious threat to Officer Connor. *See id.* While Officer Connor testified that Plaintiff threw herself on the ground to avoid being taken into custody (D.I. 94 at A731), Plaintiff and Ms. Goldborough both testified at deposition that Plaintiff was not being uncooperative or trying to evade arrest. (D.I. 93 at A534-35; D.I. 97 at A1160). If a jury believed Plaintiff's testimony, it could reasonably determine that she did not present an immediate or serious threat to Officer Connor or others. The evidence, if believed, would support a finding that Officer Connor pushed Plaintiff without provocation while she was handcuffed and suffering from a panic attack. A jury could also conclude that Plaintiff's behavior, even if uncooperative, did not warrant Officer Connor's reaction. In sum, there are material issues of disputed fact and credibility determinations that cannot be decided on a motion for summary judgment.

Officer Connor argues that Plaintiff waived her claim for excessive force by failing to address it in her responsive brief to Officer Connor's motion for summary judgment. (D.I. 105 at 10) (citing *Warren v. Township of Derry*, 2007 WL 870115, at *13 (M.D.Pa. Mar. 20, 2007) and *D'Angio v. Borough of Nescopeck*, 34 F. Supp. 2d 256, 265 (M.D.Pa. 1999)). Plaintiff's counsel conceded at oral argument that he did not address Plaintiff's excessive force claim in the responsive brief due to space limitations but stated that he did not intend to waive the claim. Of course, knowing that one has a choice to reduce the pages spent on other arguments so that one

---

[4] Resisting arrest is a misdemeanor. DUI is also a misdemeanor, unless it is a third offense.

can respond to the excessive force argument is the sort of choice page limits are designed to encourage.

Presumably, counsel's choice not to respond to the excessive force argument was a reasoned professional judgment. It was the essence of a waiver. It would also be unfair to the Defendants, who managed to write their brief within the page limits, to allow the Plaintiff to use all of her pages on a subset of the arguments while not enforcing the waiver on the other(s). Therefore, the Court will grant summary judgment on the excessive force claim.[5]

The Court notes that Officer Connor additionally argues that Plaintiff's claim cannot stand because her injuries were *de minimis*. In *Groman*, however, the Third Circuit reversed the district court's grant of summary judgment in favor of three police officers on the plaintiff's excessive force claims against them where plaintiff suffered only black eyes and minor cuts and bruises. *Groman*, 47 F.3d at 633, 634. Thus, while the injuries appear to be relatively minor, the Court would not dismiss Plaintiff's claim for excessive force on the basis that her injuries, which she describes as deep cuts that left scars (D.I. 97 at A1137), were *de minimis*.

Accordingly, although the Court does not hold that Defendants' substantive arguments are meritorious, the Court nevertheless will grant the Defendants' motion for summary judgment as to Count 4 for excessive force, as Plaintiff has waived her opposition to it.

### E.    Violation of ADA and § 504 of RA

Plaintiff's ADA and RA claims against the City appear to be based mostly on what has been called the "wrongful arrest" theory. *See, e.g., Hainze v. Richards*, 207 F.3d 795, 800 (5th

---

[5] The Court notes that earlier, when the Defendants moved to exceed the page limitations (D.I. 77), the Plaintiff opposed. (D.I. 82). The Court denied the Defendants' motion. (D.I. 86).

Cir. 2000); *Gohier v. Enright*, 186 F.3d 1216, 1220 (10th Cir. 1999); *Mohney v. Commonwealth*, 809 F. Supp. 2d 384, 398-402 (W.D. Pa. 2011); *Morais v. City of Philadelphia*, 2007 WL 853811, at *11 (E.D. Pa. Mar. 19, 2007). The essence of this theory is that the police mistake legal conduct caused by the disability as illegal conduct. In this case, the argument is that the Plaintiff showed symptoms caused by a panic attack, which Officer Connor mistook for evidence of DUI.

Plaintiff also argues the "reasonable accommodation during arrest" theory. *See, e.g.*, *Hainze*, 207 F.3d at 797-98; *Gohier*, 186 F.3d at 1222; *Mohney*, 809 F. Supp. 2d at 399-400; *Morais*, 2007 WL 853811, at *12-13. The essence of this theory is that once the police have a situation under control, the police have a duty to accommodate a disability. In this case, the theory is that no accommodation was made for or offered to the Plaintiff once she was in custody.

The ADA does not apply to a police officer's on-the-street response to a reported disturbance, whether or not the call involves subjects with mental disabilities, prior to securing the scene. *See Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000) ("To require the officers to factor in whether their actions are going to comply with the ADA, in the presence of exigent circumstances and prior to securing the safety of themselves, other officers, and any nearby civilians, would pose an unnecessary risk to innocents."). It appears, however, as though the scene in this case was secured before any of the complained of actions took place.

Plaintiff alleges the City is vicariously liable for the acts of Officer Connor. (D.I. 51, ¶ 78). Plaintiff also contends that the City is liable because Officer Connor did not receive training on persons with disabilities. (D.I. 103 at 24). As to the vicarious liability theory, Plaintiff has to

14

show as part of her prima facie case that she was disabled, Officer Connor knew or should have

known she was disabled, and that he arrested her because he confused her disability with criminal

activity. *See Morais*, 2007 WL 853811, at *11. Defendants do not challenge that Plaintiff is

disabled, and there is evidence in the record (*i.e.*, she told him) from which a jury could conclude

that Officer Connor should have known that she was disabled and mistakenly arrested her.

With respect to Plaintiff's argument that Officer Connor did not receive training on

persons with disabilities, there is some evidence in the record that the Wilmington Police

Department does provide "training" on interacting with persons with disabilities. Officer

Gestwicki, the City of Wilmington's Rule 30(b)(6) witness, and Officer Schifano both testified

that officers receive training on persons with mental disabilities and impairment at the police

academy and during regular in-service training. (D.I. 95 at A833-34; D.I. 96 at A1013, 1025-26).

The record also contains a document entitled "Understanding Defendants and Offenders with

Mental Disorders," which was distributed during regular in-service training and includes a

section on panic disorder. (D.I. 96 at A1052-56).[6]  Officer Gestwicki also testified that officers

are trained on how to accommodate individuals with disabilities during a DUI investigation.

(D.I. 96 at A1038-39).  The fact that Officer Connor did not recall this training is not dispositive,

and not particularly relevant.[7]   Despite the snippets from the depositions of the officers,

however, the Court is unconvinced that the conclusory descriptions of "training," often rather

vaguely asserted as to when it occurred, is sufficient to show actual training meeting some

---

[6] The evidence appears to be that this document was distributed in 2011, (D.I. 96 at A1051), that is, after the incident at issue in this case.

[7] Officer Gestwicki testified that training on persons with mental disabilities was historically part of the curriculum at the police academy (D.I. 96 at A1025) and, therefore, Officer Connor would have at least received this training during his time at the academy.

15

minimal standard reasonably calculated to instruct officers with what they need to know in order to make reasonably informed judgments while performing their jobs.

Defendants note that Plaintiff has not proposed any reasonable way in which the City could have accommodated her alleged disability. *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1085-87 (11th Cir. 2007). Arguably, Officer Connor did accommodate her by not requiring her to perform any field sobriety tests that would have been affected by her alleged disability. (D.I. 91 at A67-68, 77; D.I. 94 A645, 651-52, 779-80, 793). Plaintiff also argues that Officer Connor failed to ask Plaintiff if she required medical assistance after she was taken into custody. As discussed in more detail below, the evidence does not support a finding that Officer Connor was required to ask Plaintiff if she required medical assistance after she refused it on the scene. That does not mean, however, that at some later point, some officer should not have asked her about her condition.

Accordingly, the Court will deny Defendants' motion for summary judgment as to Plaintiff's claims for violation of the ADA and § 504 of the RA. Plaintiff may proceed on both the "wrongful arrest" and "reasonable accommodation during arrest" theories.

## F. *Monell* claim

In Count 6 of the Amended Complaint, Plaintiff asserts a *Monell* claim against the City of Wilmington. Plaintiff alleges that the City "developed and maintained ordinances, policies, practices and/or customs exhibiting deliberate indifference to the constitutional rights of persons within the geographic and jurisdictional limits of the City of Wilmington." (D.I. 51 at ¶ 80). Plaintiff further alleges that the City "failed to develop [a] policy and adequately and properly supervise and train its police officers in various aspects of law enforcement procedure, including

16

but not limited to, the nature and existence of probable cause, the constitutional limitations on detentions, searches and seizures, traffic stops, the Laws of Delaware, handling individuals with disabilities, and providing medical care to individuals in police custody." (*Id.* at ¶ 81).[8]

The City asserts that "Plaintiff cannot demonstrate that the City had any unconstitutional custom or policy or was deliberately indifferent with respect to any constitutional right." (D.I. 90 at 16). In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court held a municipality cannot be found liable for § 1983 claims on a theory of *respondeat superior*. *Id.* at 694. Rather, a municipality can only be held liable when the execution of its policy or custom inflicts the injury. *Id.* In addition, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability on the City under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy." *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985). A plaintiff cannot prove deliberate indifference or the existence of a municipal policy or custom authorizing constitutional violations where the isolated misconduct of a single subordinate officer conflicts with its official, written policy. *Grazier ex rel. White v. City of Philadelphia*, 328 F.3d 120, 124 (3d Cir. 2003); *see also Brown v. Muhlenberg Twp.*, 269 F.3d 205, 208-09 (3d Cir. 2001); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 22-23, 25 (3d Cir. 1997).

Plaintiff's actual *Monell* claim appears to be twofold. First, Plaintiff argues that the Wilmington Police Department has a policy of handcuffing, transporting and detaining suspects pursuant to 11 *Del. C.* § 1902 based on reasonable suspicion rather than probable cause.

---

[8] The allegations in the Amended Complaint are so broad as to be meaningless.

17

Second, Plaintiff argues that the Wilmington Police Department fails to provide training on persons with disabilities.

As to Plaintiff's first argument, 11 *Del. C.* § 1902 does not require probable cause for an investigatory detention. The Delaware Supreme Court reviewed the constitutionality of § 1902 and concluded that the statute as applied in certain instances is not unconstitutional "because there are recognized exceptions to the sweeping statements made in *Dunaway.*" *Buckingham v. State*, 482 A.2d 327, 331 (Del. 1984) (discussing *Dunaway v. New York*, 442 U.S. 200 (1979)); *see also Hicks v. State*, 631 A.2d 6, 11 (Del. 1993).

Plaintiff cites particular portions of the record (D.I. 94 at 69-70; D.I. 94-1 at 78-79; D.I. 95-1 at 6, 12; D.I. 96 at 15-17, 24) to support her claim that the Wilmington Police Department has unconstitutional policies and customs. The portions cited do not show any illegal policies. *See Wooleyhan v. Cape Henlopen Sch. Dist.*, 2011 WL 4048976, *4 (D. Del. Sept. 12, 2011) (distinguishing policies from customs). At most, Plaintiff has shown a custom. Plaintiff can show a "custom exists by showing the practice is so well-settled and widespread that the policymaking officials have either actual or constructive knowledge of it." *Id.*

What is the custom that the cited record shows?[9] If there is reasonable suspicion that the person has committed a crime, the person can be detained. That much is undisputed. The nuances of what is permitted by Delaware's two-hour detention law do not seem to be addressed in the deposition testimony. For example, the Delaware Supreme Court has stated, "Although in isolated cases the police may move a suspect without exceeding the bounds of a legitimate

---

[9] The parties submitted thousands of pages as appendices with the summary judgment motion. (D.I. 91-99, 104). Only a small percentage of the submissions are cited in the briefing. The Court has not considered any non-cited material. *See* Fed. R. Civ. P. 56(c)(3).

18

investigative detention, the Delaware rule remains that an investigatory detention must be minimally intrusive and reasonably related in scope to the circumstances which justify the interference." *Hicks v. State*, 631 A.2d 6, 11 (Del. 1993). Thus, if Wilmington police officers routinely bring any person for whom they have reasonable suspicion to the police station, without consideration of the particular circumstances, that would be in violation of both the U.S. and Delaware constitutions.

The deposition testimony does not contain sufficient evidence to infer that they do. First, much of the deposition questioning is not particularly focused. Thus, the answers are vague as to exactly what the answers are meant to assert. For example, Wilmington's Rule 30(b)(6) deponent stated that a detained person can be handcuffed for officer safety reasons. (*E.g.*, D.I. 96 at 15-17). If the transportation to the police station is proper, restraining the person during the transportation for safety reasons is also going to be proper.

The underlying issue, and really the dispositive issue, relates to the circumstances in which transportation is going to be proper. The testimony was that the police can transport detainees to the police station, not that they automatically do that.[10] The cited record contains no information at all about how frequently detainees are brought in for further investigation, generally or in relation to DUI. The evidence of custom is insufficient to create a disputed material fact.

The unconstitutional policy or custom can only be the basis for a *Monell* violation if there is a "causal link" between the unconstitutional policy or custom (automatic transportation of

---

[10] The cited portions of Officer Schifano's testimony establish only that one cannot be brought to the police station on less than reasonable suspicion. (D.I. 95-1, at 6). Officer Connor's cited testimony relied upon the Delaware Code for the proposition that a person could be detained for "up to two hours" on reasonable suspicion. (D.I. 94 at 70).

19

detainees to the police department, regardless of the need to do so) and the injury. *Wooleyhan*, 2011 WL 4048976, at *4. Thus, the only way that the Wilmington Police Department's policies or customs are implicated is based on accepting that the Plaintiff was transported to the police department in furtherance of the DUI investigation. If the police are going to get a "blood draw," which is close to a necessity to prove DUI based on drug usage, the only place where that is going to occur is the police station. It cannot occur on the street.

As earlier decided, the evidence shows that Officer Connor had reasonable suspicion to believe that the Plaintiff was driving under the influence, and the undisputed evidence shows that the reason she was being brought to the police station was in furtherance of the DUI investigation. Thus, even if the Wilmington Police Department has the unconstitutional custom of bringing most or all detainees to the police department, it seems doubtful that it was the cause of the Plaintiff's injury, as she could have been brought to the police station without reference to any unconstitutional policy or custom. In view of the decision on "policy" or "custom," however, I do not need to decide whether there is sufficient evidence to go forward on "causal link."

Plaintiff's assertion that the Wilmington Police Department fails to provide training on persons with disabilities is not a basis for a *Monell* claim. This is not a "custom" argument. This is a "policy" argument. "Policy is made when a decision maker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Wooleyhan*, 2011 WL 4048976, at *4 (citing *Berg v. County of Allegheny*, 219 F.3d 261, 275 (3d Cir.2000)). There is no evidence of "final authority." Thus, Plaintiff's *Monell* training claim fails.

20

Accordingly, the Court will grant Defendants' motion for summary judgment with respect to Plaintiff's *Monell* claim.

### F.  Failure to Provide Medical Care

Plaintiff also asserts a claim under § 1983 for failure to provide medical care. "Failure to provide medical care to a person in custody can rise to the level of a constitutional violation under § 1983 only if that failure rises to the level of deliberate indifference to that person's serious medical needs." *Groman*, 47 F.3d at 637. It is undisputed that Officer Connor asked Plaintiff at the scene if she needed medical treatment for her panic attack and that Plaintiff refused. (*See, e.g.*, D.I. 93 at A531-32; D.I. 94 at A640-41, 647, 652-53; D.I. 97 at A1156). Plaintiff argues that Officer Connor should have offered to provide her with her panic attack medicine or otherwise asked if she needed medical assistance after she was taken into custody and that the basis of her claim is the failure to provide medical care after being taken into custody. (D.I. 103 at 15-16).

Plaintiff has not set forth evidence that she requested medical treatment after she was taken into custody or that any such request was denied. Even if Plaintiff was in fact having a panic attack and continued to have a panic attack during the hours she was confined, Officer Connor is not a medical professional and it was reasonable for him not to continue to ask if Plaintiff required medical attention after she had refused it earlier. Plaintiff, therefore, cannot demonstrate that Officer Connor was "deliberately indifferent" to her medical needs. *See Groman*, 47 F.3d at 637. Accordingly, the Court will grant Defendants' motion for summary judgment as to Plaintiff's claim for failure to provide medical care.

21

## IV. CONCLUSION

For the reasons stated above, the Defendants' Motion for Summary Judgment is granted in part and denied in part. Specifically, the motion is granted as to Count I for § 1983 Fourth Amendment Malicious Prosecution, Count III for § 1983 Fourteenth Amendment Equal Protection, Count IV for § 1983 Fourth Amendment Use of Excessive Force, Count VI *Monell* Claim and Count VII for Failure to Provide Medical Care. Defendants' motion is denied as to Count II for § 1983 Fourth Amendment Unlawful Detention, Count V for Violation of the ADA and § 504 of the RA, and Count VIII for State Malicious Prosecution. An appropriate order will be entered.

22